## Commonwealth v. Detsch

*Samuel F. Bonavita,* District Attorney, for Commonwealth.
*John R. Fernan,* for defendant.

WOLFE, *P.J.,* October 14, 1975—Defendant has appealed from his conviction in the magistrate court for violation of section 1002(b)(6), article X, of The Vehicle Code of April 29, 1959, P.L. 58, as amended, 75 P.S. §1002, to wit, speeding 67 miles per hour in a 55-mile-per-hour speed zone timed by radar.

Defendant has raised several questions which we shall resolve serially:

I. *The abolition of writs of certiorari in summary proceedings violates defendant's constitutional rights.*

Defendant's argues the abolition of the writ of certiorari to a magistrate court denies him his constitutional right to have a court of record review fatal defects in the transcript before the magistrate and, because the writ has been abolished by the Pa. R. Crim. P. 67(f) by the Supreme Court, effective January 1, 1974, defendant has been denied a constitutional right that the rules of court are powerless to revoke.

Article 5, sec. 26, of the Pennsylvania Constitution, as pertaining to writs of certiorari, provides:

"Unless and until changed by rule of the Supreme Court, in addition to the right of appeal under section nine of this article, the judges of the courts of common pleas, within their respective judicial districts, shall have power to issue writs of certiorari to the municipal court in the City of Philadelphia, justices of the peace and inferior courts not of record and to cause their proceedings

to be brought before them, and the right and justice to be done."

Defendant's argument that a substantive right has been abrogated by Supreme Court rule could be laid to rest with the pronouncement that the Supreme Court did not, pro se, abolish writs of certiorari but was empowered to do so by the Constitution of the Commonwealth. Thus, the power emanated from the Constitution itself in which defendant asserts he has an irrevocable vested right. It has never been the law that a sovereign body cannot change its Constitution. When statutory laws are enacted or rules of court promulgated which violate constitutional rights, a challenge may be made.

Nonetheless, historically, the writ of certiorari was merely a remedy to question procedural defects in the proceedings before a justice of the peace and the writ did not go to substantive errors. In Commonwealth v. Meckes, 144 Pa. Superior Ct. 381, 384, 19 A.2d 555 (1941), the court stated in following Commonwealth v. Benson, 94 Pa.Superior Ct. 10 (1928):

"The practice relating to (1) appeals from summary convictions, and (2) their review on certiorari is well settled. If it is desired to attack only the regularity of the proceedings before the justice or alderman, this is done by writ of certiorari to the Court of Common Pleas, and the assignment of the alleged errors relied on; in which event the judgment of the inferior magistrate is sustained or set aside, depending on whether the proceedings objected to are found to be legal and regular or not, and whether they sustain the conviction or not."

See also Commonwealth v. Scott-Powell Dairies, 128 Pa. Superior Ct. 598, 194 Atl. 684 (1937), and

Commonwealth v. Hunter, 107 Pa. Superior Ct. 513, 164 Atl. 113 (1933).

This court, in considering a similar question in Commonwealth v. Ristau, May term 1974, no. 78, Thirty-seventh Judicial District of Pennsylvania, Criminal Division, in interpreting Rule 67(f) of the Rules of Criminal Procedure stated:

"Rules of procedure, whether they be civil or criminal, cannot transgress substantive law. Rules implement and are the conveyors of substantive rights and are remedial in character. Thus, it would be unconstitutional in our opinion for any Rule or any abolition of a Rule that would abridge constitutional rights. We hold on an appeal properly perfected under Rule 67 (it) will preserve all prior rights that could be brought under a writ of certiorari and may be considered by the Court on appeal de novo."

It has never been established that the abolition or creation of purely procedural rules violate constitutional rights unless those rules attempt to transgress substantive rights. In the instant case, the abolition of the writ of certiorari to the inferior court from a court of record is strictly procedural in nature. All substantive rights have been protected through the appeal de novo under Rule 67 of Rules of Criminal Procedure.

In further support of defendant's position that the Supreme Court rules cannot abridge constitutional rights, defendant relies on article V, sec. 10(c), of the Pennsylvania Constitution which provides as pertinent this case:

"The Supreme Court shall have the power to prescribe general rules governing practice, procedure and conduct of all courts, justices of the peace and all officers serving process or enforcing

orders . . . if such rules are consistent with this Constitution and neither abridge, enlarge or modify the substantive rights of any litigant. . . ."

In this regard, defendant asserts at the hearing before the magistrate that the Commonwealth failed to establish the offense occurred in Warren County, that the arresting officer was in uniform and failed to identify defendant at the time of the hearing as the violator. It is these defects defendant claims are substantive rights that historically could be heard on certiorari, and, if so raised and sustained, the charges against defendant were dismissed with prejudice.

We cannot agree with defendant's argument that these defects, assuming they exist, violate his rights for the reason these questions can still be raised on a hearing de novo. This does not subject defendant to double jeopardy as he argues. Only defendant has the right to appeal an adverse verdict in the magistrate court: Commonwealth v. National Advertising Company, 67 D. & C. 2d 497 (1974).

Finally, defendant argues Rule 67 merely abolished the form of certiorari but not the substance, and, prior to Rule 67, a defendant had a substantive right to take advantage of any technical defects in the proceeding before the magistrate which was exercised procedurely by a writ of certiorari. We recognize that prior law permitted a dismissal against a defendant on a technical defect under review by a court of record on writ of certiorari, thus preventing the arresting officer to again bring the same charge due to the expiration of the statute of limitations or for some other statutory provision. Although we agree acquittals were acquired on this basis, we cannot agree that the

acquittals were based on substantive law but rather on the deficiency of the arresting officer or magistrate. The use of a writ of certiorari is a procedural remedy to bring the deficiency before the court. Notwithstanding the abolition of the writ, the substantive law still remains intact.

We, therefore, hold there is no constitutional prohibition by reason of Rule 67 of Rules of Criminal Procedure.

## II. *Accuracy of defendant's speedometer.*

Defendant argues his timing by radar by the State Trooper had to be incorrect for whatever reason, because subsequent to his arrest he had his speedometer tested from the vehicle he was operating at the time of his arrest and it was found to register a slower speed than the actual speed traveling and, therefore, according to the radar timing he would have had to been traveling70 miles per hour rather than the 67 miles per hour the officer clocked him. Additionally, defendant argues he was familiar with the vehicle and at speeds commencing at 60 miles per hour the grillwork developed a wind whistle and on the particular date he was arrested this whistle did not develop.

As to the speedometer inaccuracy argument, this court considered a similar argument in Commonwealth v. Johnson at November term, 1973, no. 17, Criminal Division, Thirty-seventh Judicial District, and therein held alleged mechanical defects cannot be accepted as valid defenses to speeding charges: Commonwealth v. Ellsworth, 57 D. & C. 2d 381 (1972), and Sladky Motor Vehicle Operator License Case, 213 Pa. Superior Ct. 403, 249 A.2d 786 (1968). The reasoning for these holdings is that an operator is chargeable with the accuracy of his

speedometer and its inaccuracy cannot prevent the Commonwealth from perfecting proper arrests for violating speed limit laws. This issue was again resolved by this court in Commonwealth v. McCartney, 53 D. & C. 2d 265 (1971), wherein a tractor-trailer tachometer reading was compared to the radar reading, with the court holding that a tachograph speed reading is insufficient to offset evidence of the Commonwealth's radar reading mainly for the reason that no requirement is placed upon the operator of the vehicle having a tachograph to have it tested for accuracy.

In Commonwealth v. Ellsworth, 57 D. & C. 2d 381 (1972), and Commonwealth v. Ellsworth, 57 D. & C. 423 (1972), this court dismissed defendant's allegations of defective speedometer for the reasons hereinbefore stated.

For these reasons, we find no merit to this argument.

III. *The Commonwealth failed to attach a proper certification that the radar was approved by the Secretary of the Pennsylvania Department of Transportation.*

Defendant argues that Julius A. Trombetta, agent for Jacob G. Kassab, Secretary of Transportation, approved the radar used by the arresting officer; however, the Pennsylvania Department of Transportation (PennDOT) has not approved the radar and thus it is argued that this is a substantive defect under The Vehicle Code requiring the radar to be approved by the Department of Transportation. We cannot accept this argument and find no merit that simply because the name of the department has been changed this warrants dismissing a motor vehicle violation.

## ORDER

And now, October 14, 1975, we find defendant guilty as charged and in the absence of an appeal, defendant is sentenced to pay costs of prosecution and the fine therein.